142 Nev., Advance Opinion 50



FILED

Jul 02 2026
ELIZABETH A. BROWN
CLERK OF SUPREME COURT

# IN THE SUPREME COURT OF THE STATE OF NEVADA

TRUDI LEE LYTLE AND JOHN ALLEN LYTLE, AS TRUSTEES OF THE LYTLE TRUST,
Appellants,
vs.
SEPTEMBER TRUST, DATED MARCH 23, 1972; GERRY R. ZOBRIST AND JOLIN G. ZOBRIST, AS TRUSTEES OF THE GERRY R. ZOBRIST AND JOLIN G. ZOBRIST FAMILY TRUST; RAYNALDO G. SANDOVAL AND JULIE MARIE SANDOVAL-GEGAN, AS TRUSTEES OF THE RAYNALDO G. AND EVELYN A. SANDOVAL JOINT LIVING AND DEVOLUTION TRUST DATED MAY 27, 1992; AND DENNIS A. GEGEN AND JULIE S. GEGEN, HUSBAND AND WIFE AS JOINT TENANTS,
Respondents.

No. 87237

Appeal from a post-judgment district court order awarding attorney fees and costs. Eighth Judicial District Court, Clark County; Timothy C. Williams, Judge.

*Affirmed in part, reversed in part, and remanded.*

Holland & Hart LLP and Abraham G. Smith, Las Vegas; Womble Bond Dickinson (US) LLP and Daniel F. Polsenberg and Dan R. Waite, Las Vegas, for Appellants.

Christensen James & Martin and Wesley J. Smith and Laura J. Wolff, Las Vegas,
for Respondents.

BEFORE THE SUPREME COURT, HERNDON, C.J., and PICKERING and CADISH, JJ.


*OPINION*

By the Court, PICKERING, J.:

Trudi and John Lytle appeal an order requiring them to pay the attorney fees their opponents incurred defending a contempt judgment against them on a prior appeal. The district court calculated the award using the lodestar method, which multiplies the hours the attorney reasonably spent on the matter by a reasonable hourly rate. The Lytles raise one main issue: when a fee applicant hires and pays their attorney at the attorney's standard hourly rate, may a district court use a higher rate as the lodestar multiplier if it finds the attorney's rate to be below market? We hold that, for a party with private counsel working at an agreed-upon hourly rate, the actual billing arrangement is a significant, though not necessarily controlling, factor in calculating a fee award. Depending on the fee-shifting statute involved, a higher-than-billed rate may be appropriate where, for example, the law firm discounted its rates to provide pro bono or public-interest representation. In this case, however, there was no evidence of a discount, only the district court's finding that the firm could have charged more for its work than it did. Because this does not justify an award greater than the fees billed at the agreed-upon rate, we reverse and remand for entry of judgment recalculated at the rate actually charged.

I.

A.

Appellants Trudi and John Lytle, as trustees of the Lytle Trust, and respondents September Trust, Zobrist Trust, Sandoval Trust, and

Dennis and Julie Gegen (collectively, September Trust) own homes in a subdivision governed by the Rosemere Estates Property Owners Association. After years of contentious litigation, the Lytles recovered several judgments against the Association totaling more than $1.4 million. When the Association did not pay the judgments, the Lytles sought to collect them from other property owners in Rosemere Estates, recording abstracts of judgment against their homes.

In response, September Trust sued the Lytles for declaratory and injunctive relief. The district court determined that the Association was a limited purpose association, meaning its property owners' homes were not subject to lien for its unpaid judgments unless its CC&Rs provided otherwise, which the Association's did not. The court therefore struck the abstracts of judgment and permanently enjoined the Lytles from attempting to enforce their judgments against the property owners' homes. Finding that the Lytles defended the action without reasonable ground, *see* NRS 18.010(2)(b), it granted September Trust's motion for attorney fees.

The Lytles then sued to have a receiver appointed for the Association with the power to impose special assessments on the property owners, so the receiver could pay the Lytles' judgments. When September Trust learned about the receivership action, it sought contempt sanctions against the Lytles in the injunction action. The district court determined that the Lytles' attempt to collect their judgments via a receivership violated its permanent injunction and held the Lytles in contempt. September Trust moved for the attorney fees incurred in the contempt proceeding, *see* NRS 22.100(3), which the district court granted.

The Lytles appealed and sought writ relief from this court as to the contempt order and related fee award. We denied writ relief as to the

3

contempt order and affirmed the fee award. After the appellate proceedings concluded, September Trust filed a motion in district court seeking the additional fees incurred to defend the contempt order and fee award on appeal. The district court granted the fee motion, from which order the Lytles now appeal.

B.

September Trust has been represented by the same law firm throughout. In its first and second motions for attorney fees, September Trust requested fees calculated at the $260 per hour rate its attorneys charged. It supported the motions with the firm's monthly billing statements, which contain detailed descriptions of the work done, and a declaration from lead counsel attesting that the firm's blended "hourly rates of $260.00 per hour are reasonable." The district court granted the motions using the $260 per hour rate to calculate the awards.

By the time September Trust filed its third motion for attorney fees, the firm had increased its hourly rate to $265. As before, September Trust supported its fee request with relevant billing statements and a declaration from counsel authenticating them. But instead of the $100,082 in fees billed at $260, then $265 per hour for the contempt appeal work, September Trust asked for $144,694, proposing to calculate fees at $425-$475 an hour for partners and $250-$325 an hour for associates. Counsel's declaration acknowledged that these were "not the actual rates charged" but averred they were "reasonable" because they represented "the prevailing market rates in the relevant community" for comparable work. As support, the motion and declaration cited nine local cases where fees were awarded at the higher rates. The fee motion provided no information about the issues or attorneys involved in the cited cases, beyond a parenthetical following one citation noting that the court in that case found

4

the rates in line with those "charged by other similarly situated attorneys who practice commercial litigation and construction law."

The Lytles opposed the third motion for attorney fees. They argued that any award should be calculated at the $260-$265 hourly rate billed, in keeping with September Trust's negotiated billing agreement with its attorneys and the two prior fee awards. Using higher-than-billed rates, they argued, was inconsistent with NRS 22.100(3), which provides for contempt-based fee awards but limits them to the reasonable fees "incurred by a party as a result of the contempt," and would result in an unauthorized windfall and an impermissible double penalty. The district court rejected the Lytles' arguments. Finding the attorneys' billed rates to be "below-market" and that "the reasonable value of the service provided . . . is aligned with the [higher] requested rate[s]," it granted the third fee motion using the higher rates September Trust requested. This resulted in an award of $143,528.91, a 43% markup over the fees actually charged.[1]

## II.

## A.

Under the American rule, each side pays its own attorney fees, unless a statute, rule, or contract provides otherwise. *Thomas v. City of North Las Vegas*, 122 Nev. 82, 90, 127 P.3d 1057, 1063 (2006). Nevada's contempt statute, NRS 22.100(3), permits fee-shifting in cases involving civil contempt. To be recoverable, the fees sought must be both "reasonable"

---

[1]The district court based its fee award under both NRS 22.100(3) and section 25 of the CC&Rs. September Trust does not present authority that the CC&Rs support an award of fees at higher rates than those billed, so we focus our analysis on NRS 22.100(3). The district court also awarded nominal costs and disallowed $1,165 in charged fees for improper block billing, neither of which is challenged on appeal.

5

and "incurred . . . as a result of the contempt." *Id.*; *see Detwiler v. Eighth Jud. Dist. Ct.*, 137 Nev. 202, 213-14, 486 P.3d 710, 721 (2021) (describing NRS 22.100(3) as imposing separate reasonableness and but-for causation requirements). The Lytles concede that NRS 22.100(3) authorized an award of the fees actually billed to defend the contempt order on appeal. Their argument is that, to the extent the district court used hourly rates higher than were billed to calculate its award, the statute did not authorize their recovery, so the award should be reduced to the extent of the markup.

A district court's decision regarding an award of attorney fees "is generally reviewed for an abuse of discretion," but "where, as here, the decision implicates a question of law, the appropriate standard of review is de novo." *Gunderson v. D.R. Horton, Inc.*, 130 Nev. 67, 82, 319 P.3d 606, 616 (2014). Factual findings are reviewed deferentially, for clear error, *see Atlanta J. & Constr. v. City of Atlanta Dep't of Aviation*, 442 F.3d 1283, 1287 (11th Cir. 2006), and must be supported by substantial evidence, s*ee Clark v. Marin*, 142 Nev., Adv. Op. 47, ___ P.3d ___, ___ (2026).

B.

The district court used the lodestar method to calculate its fee award. *See Shuette v. Beazer Holdings Corp.*, 121 Nev. 837, 864, 124 P.3d 530, 548-49 (2005) (holding that the lodestar method is a permissible way to calculate a reasonable fee award). The lodestar method involves multiplying "the number of hours reasonably spent on the case by a reasonable hourly rate." *Herbst v. Humana Health Ins. of Nev.*, 105 Nev. 586, 590, 781 P.2d 762, 764 (1989). A "reasonable hourly rate" for purposes of a lodestar calculation has been defined as the rate "prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Blum v. Stenson*, 465 U.S. 886, 896 n.11 (1984); *see Cuzze v. Univ. & Cmty. Coll. Sys. of Nev.*, 123 Nev. 598, 607 n.29, 172

6

P.3d 131, 137 n.29 (2007) (awarding fees under 42 U.S.C. § 1988 at the prevailing market rate, citing *Blum*, 465 U.S. at 896 n.11). The lodestar method applies across a range of attorney-client relationships, including those involving attorneys providing pro bono representation or who do not have actual billing rates for comparable work because they maintain "a contingent fee or public interest practice." *People Who Care v. Rockford Bd. of Educ., Sch. Dist. No. 205*, 90 F.3d 1307, 1310 (7th Cir. 1996). Designed to provide a "readily administrable" and "objective" measure for statutorily authorized fee-shifting awards, "the lodestar method produces an award that *roughly* approximates the fee that the prevailing attorney would have received *if he or she had been representing a paying client who was billed by the hour in a comparable case.*" *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 551 (2010) (emphasis added to that in original).

Here, we have a private law firm representing a paying client who was billed by the hour pursuant to a negotiated fee agreement. In such a case, "[t]he best evidence of the value of the lawyer's services is what the client agreed to pay." *Assessment Techs. of WI, LLC v. WIREdata, Inc.*, 361 F.3d 434, 438 (7th Cir. 2004); *accord Dillard v. City of Greensboro*, 213 F.3d 1347, 1354-55 (11th Cir. 2000) (what an attorney charges the client is "powerful, and perhaps the best, evidence of . . . market rate"). Indeed, the rate billed under a freely negotiated legal services contract "is not 'evidence' about market value; it *is* market value." *Balcor Real Est. Holdings, Inc. v. Walentas-Phoenix Corp.*, 73 F.3d 150, 153 (7th Cir. 1996).

We agree with these observations and adopt the rule that, for a paying client "with private counsel, the actual billing arrangement is a significant, though not necessarily controlling, factor in determining what [hourly rate and thus what] fee is 'reasonable'" for lodestar purposes.

*Crescent Publ'g Grp., Inc. v. Playboy Enters., Inc.*, 246 F.3d 142, 151 (2d Cir. 2001). There are exceptions to the rule: a higher-than-billed rate may be appropriate, for example, if the fee applicant shows the attorney charged discounted rates "for public-spirited or non-economic reasons," *Covington v. District of Columbia*, 57 F.3d 1101, 1107 (D.C. Cir. 1995) (citing *Blum*, 465 U.S. at 896 n.11), or to make their services "affordable to disadvantaged individuals," *4DD Holdings, LLC v. United States*, 153 Fed. Cl. 371, 382 (2021); *see Miller v. Wilfong*, 121 Nev. 619, 623, 119 P.3d 727, 730 (2005) (holding that "attorney fee awards to pro bono counsel" may be proper if authorized by agreement, statute, or rule). But absent proof an adjustment is warranted and allowed by the fee-shifting provision involved, the attorney's "actual billing rate for comparable work is presumptively appropriate to use as the market rate" in the lodestar calculation. *People Who Care*, 90 F.3d at 1310 (internal quotations omitted); *see Gulfstream III Assocs., Inc. v. Gulfstream Aerospace Corp.*, 995 F.2d 414, 422 (3d Cir. 1993) (explaining that "in most cases, billing rates reflect market rates, and they provide an efficient and fair short cut for determining the market rate"); *but see Carson v. Billings Police Dep't*, 470 F.3d 889, 892 (9th Cir. 2006) (stating a different rule and attaching less significance to billed rate than market rate); *Chacon v. Litke*, 105 Cal. Rptr. 3d 214, 233 (Ct. App. 2010) (similar).

September Trust's attorneys billed $260 to $265 per hour for their work on this case. Nothing suggests these were not the standard rates the firm charged its full-fare clients. Therefore, the billed rate presumptively established the market rate for purposes of the lodestar formula's reasonable hourly rate multiplier. *See People Who Care*, 90 F.3d at 1310. The presumption is especially strong given the district court's two prior fee awards, which it based on September Trust's representations that

8

its "law firm's hourly rates of $260.00 per hour are reasonable." Further strengthening the presumption, the second award was for fees incurred to obtain the contempt order, while the third award was for fees incurred to defend that order (and the second fee award) on appeal, meaning they both involved the same subject matter. Hourly rates may increase over the life of a case, as they did when September Trust's attorneys raised their rates from $260 to $265 per hour, but relitigating the prevailing market rate for lodestar purposes on successive fee applications involving the same attorneys in the same case is "illogical" and unnecessarily time-consuming. *McNeil v. District of Columbia*, 233 F. Supp. 3d 150, 155-56 (D.D.C. 2017) (declining to revisit a prior prevailing rate determination because it would be "illogical" to do so and "increase the burden on the courts and unnecessarily protract the litigation," adding that "'treating a case as an inclusive whole' . . . for the purpose of resolving [successive] fee motions is helpful in avoiding a 'Kafkaesque judicial nightmare' of indefinitely extended fee litigation") (quoting *Comm'r, INS v. Jean*, 496 U.S. 154, 162-63 (1990)); *see Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983) ("A request for attorney's fees should not result in a second major litigation."), *superseded by statute as recognized in Fletcher v. Doig*, 145 F.4th 756, 768 (7th Cir. 2025).[2]

As the fee applicant, September Trust needed to present proof sufficient to overcome the presumption that the hourly rates billed represented the market rate and should serve as the lodestar multiplier.

---

[2]Although the Lytles contend that the prior awards are evidence of the reasonable hourly rate, they do not argue that they established law of the case and accept the $5 increase in the blended rate billed from $260 to $265 per hour.

*See Dillard*, 213 F.3d at 1354-55. The only evidence it offered to support the higher-than-billed rates it sought of $425-$475 an hour for partners and $250-$325 an hour for associates was its attorney's conclusory statement that these represented prevailing rates and a list of nine local cases awarding fees in those ranges. But apart from a parenthetical following one of the citations stating that the attorneys in that case practiced "commercial litigation and construction law," neither the motion nor the declaration provided information showing that the string-cited cases involved "similar services by lawyers of reasonably comparable skill, experience and reputation," as required to establish a prevailing market rate for lodestar purposes. *Blum*, 465 U.S. at 896 n.11. September Trust's claim—and the district court's finding—that the rates its attorneys billed were "below-market" thus fails because it was not supported by competent evidence. *See Depaoli v. Vacation Sales Assocs., LLC*, 489 F.3d 615, 622-23 (4th Cir. 2007) (reducing the lodestar multiplier to the rate actually billed and recalculating the award accordingly where the fee applicant did not offer competent evidence showing "what attorneys earn from paying clients for similar services in similar circumstances") (internal quotation marks omitted); *Dillard*, 213 F.3d at 1354-55 (similarly reducing a fee award to use the rate actually billed where the evidence offered to support the higher rate was conclusory and insufficient to overcome the presumption equating the billed rate with the market rate).

Even if the record supported that the rates charged were below-market—it does not—the sums the district court added to September Trust's fee award still could not stand. The emphasis in the fee-shifting context on "ascertaining a 'reasonable' fee suggests the absence of a penalty beyond the punitive or deterrent policies taken into consideration in the

10

decision to award fees in the first instance." *Crescent Publ'g Grp., Inc.*, 246 F.3d at 151. The goal is compensation, not the imposition of an additional penalty on the payor or the conferral of a windfall on the payee. *Id.*; *see Clark*, 142 Nev., Adv. Op. 47, ___ P.3d at ___. For these reasons, fee applicants seeking reimbursement at rates higher than those charged by their attorneys "'must offer some evidence that [the applicant's attorneys charged] reduced rates for public-spirited or non-economic reasons,'" *Makray v. Perez*, 159 F. Supp. 3d 25, 42 (D.D.C. 2016) (quoting *Covington*, 57 F.3d at 1107-08), or that other circumstances justify the higher rate, *see 4DD Holdings, LLC*, 153 Fed. Cl. at 382 (suggesting that a higher-than-billed rate may be appropriate in instances where "counsel is discounting its rates to make them affordable to disadvantaged individuals or has agreed to a contingency fee that might otherwise cap the award of shifted fees"). But here, September Trust makes no claim that its attorneys charged it discounted rates, much less that the attorneys did so for public-spirited or other noneconomic reasons justifying a departure from the rates that were negotiated and billed. On the contrary, its argument is that the Lytles' litigation tactics put it to unnecessary expense, making it fair to mark up the final award. But that expense was already compensated by the first and second fee awards and does not justify using a higher rate to calculate the fees incurred to defend the contempt judgment on appeal, which was the subject of the third fee motion.

### C.

The statute authorizing the award of attorney fees in civil contempt cases, NRS 22.100(3), requires the fees be both "reasonable" and "incurred by the party as a result of the contempt." The phrase "incurred by the party as a result of the contempt" connotes a causation requirement, in addition to the reasonableness requirement. *See Detwiler*, 137 Nev. at

11

213-14, 486 P.3d at 721. Where fees are awarded as a civil sanction for contempt, the award is compensatory and remedial. *Id.* at 209-11, 486 P.3d at 718-19. Such awards "serve to make the innocent party whole" rather than to coerce or punish the offending party. *Id.* at 211, 486 P.3d at 719. If the statute sets a civil sanction compensating the party's loss, the party's actual loss sets the limit for the recovery. *See id.* at 212, 486 P.3d at 720 (explaining "if an unconditional fine compensates for a party's loss, then it is limited to that party's *actual* loss") (internal quotations omitted). While fees may be "incurred" and compensated using lodestar-derived hourly rates when other methods are not appropriate, *see Clark*, 142 Nev., Adv. Op. 47, ___ P.3d at ___, that does not greenlight a fee award that reaches beyond the additional expense or time associated with the extra work the fee-shifting statute compensates. Increasing a fees award beyond these bounds risks straying from a permissible civil compensatory sanction into an impermissible criminal punishment. *Detwiler*, 137 Nev. at 211-12, 486 P.3d at 719-20.

Limiting attorney fees awarded under NRS 22.100(3) to the party's compensable loss in no way overrules *Shuette* or *Brunzell*, as September Trust argues. Those cases provide ground rules for calculating a reasonable fee, and they apply to the extent the district court's discretion is not otherwise cabined by the applicable statute, rule, or contract. *See Shuette*, 121 Nev. at 864-65, 124 P.3d at 548-49 (addressing the lodestar method and the reasonableness factors enumerated in *Brunzell v. Golden Gate National Bank*, 85 Nev. 345, 349, 455 P.2d 31, 33 (1969)). The limitations imposed by the statute, rule, or contract authorizing the attorney fee award, however, must also be respected in fixing the award.

12

*See Clark*, 142 Nev., Adv. Op. 47, ___ P.3d at ___. NRS 22.100(3)'s reasonableness and causation requirements thus apply.

Though NRS 22.100(3) limits the award to fees that are both reasonable and incurred as a result of the contempt, it does not set a hard ceiling that invariably caps the fee award at the amount actually paid. Cases elsewhere are divided on how to interpret the word "incurred" in fee-shifting statutes, some of which would set a hard ceiling where others would not. *Compare, e.g.*, *Marré v. United States*, 38 F.3d 823, 828-29 (5th Cir. 1994) (holding that "incur" limits a fees award to the amount owed under a fee agreement); *Wisconsin v. Hotline Indus., Inc.*, 236 F.3d 363, 364 (7th Cir. 2000) (concluding that a statute authorizing payment of "incurred" attorney fees "limits a fee award to actual outlays"), *with Centennial Archaeology, Inc. v. AECOM, Inc.*, 688 F.3d 673, 681-82 (10th Cir. 2012) (disagreeing with other courts' reliance on the word "incurred" and instead focusing on the fee-shifting statute's purpose and phrasing as a whole and awarding hourly-based-fees as incurred, despite fixed fee billing arrangement involved); *Bradley v. United States*, 164 Fed. Cl. 236, 247-48 (2023) (concluding that "actually incurred" did not limit a fees award to those specified in the parties' agreement, where the statute also gave the district court discretion to determine an appropriate amount in its "opinion"). But our court has not interpreted "incurred" as creating a hard ceiling, instead reading it in the context of the fee arrangement and fee-shifting provision involved as in *Centennial Archaeology*, 688 F.3d at 681-82. *See Clark*, 142 Nev., Adv. Op. 47, ___ P.3d at ___; *Logan v. Abe*, 131 Nev. 260, 265, 350 P.3d 1139, 1142 (2015) (addressing costs and fees "incurred" under NRS 17.115(4) and NRCP 68 and explaining a party can incur an expense without actually paying it). Though there may be circumstances where the district court

13

properly awards fees under NRS 22.100(3) beyond those the party actually paid because such serves the statute's compensatory purpose, *see Clark*, 142 Nev., Adv. Op. 47, ___ P.3d at ___ (recognizing an hourly-based fee award as appropriate to compensate a contingent-fee lawyer for the fees "incurred," i.e., compensable time spent, "in making [a] motion" for an order compelling discovery under NRCP 37(a)(5)(A)), as discussed above, September Trust presents no evidence for why they are entitled to extra fees here.

## III.

In sum, NRS 22.100(3)'s "incurred" language conveys that this statute compensates and does not punish beyond the fee award itself. Because the district court calculated the lodestar amount using an increased billing rate without evidence that such was necessary to compensate September Trust for its actual losses incurred as a result of the contempt, the resulting fee award was neither reasonable nor for fees incurred as a result of the contempt. We therefore reverse and remand with instructions to the district court to recalculate the award using the rates actually billed for the time charges allowed. We otherwise affirm.

Pickering

Pickering, J.

We concur:

Herndon, C.J.

Cadish, J.

14